## Norfolk

### MICHAEL LEWIS PORTER

### v.

### COMMONWEALTH OF VIRGINIA

No. 0224-92-1

Decided September 14, 1993

COUNSEL

G. Curtis Overman, Jr. (Gibson, Cowardin & Overman, on brief), for appellant.

Oliver L. Norrell, III, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**WILLIS, J.**—On appeal from his bench trial conviction of second degree murder, Michael Lewis Porter contends (1) that the evidence was insufficient as a matter of law to support his conviction, and (2) that the trial court erred in denying his motion for a mistrial. We hold that the evidence was insufficient to support a murder conviction. We reverse Porter's conviction on that ground and remand the case for further proceedings on a lesser charge if the Commonwealth be so advised. We do not address the mistrial issue.

This case arises out of an incident that occurred on the night of June 30, 1991. As of that date, Porter and the victim, Jan Cooper, had been living together for about two years. On the evening of June 30, Porter came to the home of Mr. and Mrs. Caudle, Jan's mother and step-father, and told them that Jan had injured her leg and needed to go to the hospital. Mr. Caudle drove Porter and Jan to the hospital. At the hospital, Porter told Mr. Caudle that Jan fell off his car. When Mrs. Caudle arrived at the hospital, Porter told her that Jan fell off the hood of his car and hit her head. When Mrs. Caudle replied "I thought it was her leg," Porter replied, "[w]hatever, you can't see her now." Jan died at the hospital.

At the hospital, Porter told the police that he and Jan had been sitting on the hood of his car when she fell off and hit her head. He said that his car was not moving at the time. He agreed to take the police to the scene. However, he could not find the spot and the police found no evidence indicating the exact location of the incident. The officers noted that Porter was under the influence of alcohol.

The medical examiner found multiple large areas of abrasion on Jan's chest, back, legs, chin, and the back of her head. She also found contusions on Jan's chest, legs, right arm, and head. The abrasions and contusions showed a pattern on her skin that was described as "road burn" caused by her body's being rolled or scraped along the surface of a roadway. Examination of Jan's organs revealed a torn liver. The medical examiner found multiple impact injuries, including fractures of the skull, of ribs on both sides, and of her nasal cartilage. Jan's blood alcohol level was .10 percent. The medical examiner testified that at this level "reflexes would generally be depressed. [The person]

may have problems with coordination, . . . motor function would be somewhat impaired."

The medical examiner testified that Jan's injuries were inconsistent with falling off a motionless vehicle. Jan suffered injuries over her entire body and marks on her skin suggested tire tread contact. The medical examiner determined the cause of death to be a fractured skull, resulting from Jan's head having been run over by a vehicle.

Examination of Porter's car revealed unidentified fingertip markings showing that a hand had slid from the windshield wiper area down to the front side of the car where the radio antenna was bent. Jan's shorts bore tire tread marks consistent with the tread on the right rear tire of Porter's car.

Donna Lester testified that two weeks before Jan's death, for a five minute period, Porter repeatedly hit Jan, threw her on the floor, and kicked her. Ms. Lester's ex-husband stopped Porter by convincing him to go outside. Ms. Lester testified that Porter said, "I'm going to have to get her out of here before I end up killing her or doing something I regret."

Mrs. Caudle testified that she called Jan on the night of her death to tell her that her pocketbook had been found. While talking to Jan, Mrs. Caudle heard Porter yell, "[b]itch, get off the phone!"

Porter first contends that the evidence is insufficient to support a murder conviction. We agree.

In *Essex v. Commonwealth,* 228 Va. 273, 322 S.E.2d 216 (1984), the Supreme Court considered whether the operation of a motor vehicle, under circumstances of intoxication and extreme recklessness, resulting in a fatal accident could support a second degree murder conviction. While intoxicated, Essex drove his vehicle at high speed, crossing back and forth over the center line of the road for a distance of several miles, ran a red light, and finally collided head-on with an oncoming vehicle, killing two passengers in that vehicle and a passenger in his. Finding that evidence insufficient and reversing Essex's conviction for second degree murder, the Supreme Court said:

> Malice, a requisite element for murder of any kind, is unnecessary in manslaughter cases and is the touchstone by which murder and manslaughter cases are distinguished. Malice may be either express or implied by conduct. . . ." Express malice is

evidenced when 'one person kills another with a sedate, deliberate mind, and formed design'. . . . Implied malice exists when any *purposeful, cruel act* is committed by one individual against another without any, or without great provocation; . . ."

The authorities are replete with definitions of malice, but a common theme running through them is a requirement that a wrongful act be done "wilfully or purposefully." This requirement of volitional action is inconsistent with inadvertence. Thus, if a killing results from negligence, however gross or culpable, and the killing is contrary to the defendant's intention, malice cannot be implied. In order to elevate the crime to second-degree murder, the defendant must be shown to have wilfully or purposefully, rather than negligently, embarked upon a course of wrongful conduct likely to cause death or great bodily harm.

\* \* \*

In the absence of express malice, [malice] may only be implied from conduct likely to cause death or great bodily harm, wilfully or purposefully undertaken. Thus, for example, one who deliberately drives a car into a crowd of people at a high speed, not intending to kill or injure any particular person, but rather seeking the perverse thrill of terrifying them and causing them to scatter, might be convicted of second-degree murder if death results. One who accomplishes the same result inadvertently, because of grossly negligent driving, causing him to lose control of his car, could be convicted only of involuntary manslaughter. In the first case the act was volitional; in the second it was inadvertent, however reckless and irresponsible.

*Id.* at 280-81, 322 S.E.2d at 219-20 (citations omitted) (emphasis in the original).

The only direct evidence of how Jan suffered her fatal injury was Porter's statement that she fell off the hood of his motionless car. The medical examiner's testimony justified a finding that this account was untrue. The remaining evidence was circumstantial.

[I]f the proof relied upon by the Commonwealth [to prove a necessary element] is wholly circumstantial . . . then to establish guilt beyond a reasonable doubt all the necessary circumstances proved must be consistent with guilt and inconsistent with innocence . . . [t]o accomplish this proof and overcome the presump-

tion of innocence, the evidence as a whole must exclude all reasonable conclusions inconsistent with guilt.

*Harrell v. Commonwealth,* 11 Va. App. 1, 9-10, 396 S.E.2d 680, 684 (1990) (citations omitted).

We place too great a burden on the Commonwealth if we require it to exclude every possible theory or surmise presented by the defense. . . . The hypotheses which the prosecution must reasonably exclude are those "which flow from the evidence itself, and not from the imagination of defendant's counsel."

*Cantrell v. Commonwealth,* 7 Va. App. 269, 289-90, 373 S.E.2d 328, 338-39 (1988), *cert. denied,* 496 U.S. 911 (1990) (citation omitted).

The evidence supports the finding that Jan slipped off the hood of the car. This conclusion is consistent with Porter's account and with the fingerprint marks found on the hood. The nature of Jan's injuries and the tire marks on her shorts support the finding that Jan was run over by the car and died as a result. The fact that Jan fell off the hood and was run over by the car supports the finding that forward movement of the car caused her to fall. No evidence established who or what set the car in motion. No evidence proved whether any person other than Jan and Porter was present. If, based upon Porter's ownership of the car and the absence of evidence that any other person was present, we accept the hypothesis that Porter set the car in motion, the record does not disclose the circumstances surrounding that act. Porter may have set the car in motion maliciously. He may as well have done so recklessly or negligently.

The Commonwealth argues that Porter had previously engaged in violence against Jan, that he had called her a bitch, and that he had threatened to kill her. The evidence supports these arguments. However, those circumstances do not prove murder. Deplorable as assault and battery is, it falls far short of murder. Rude and insulting language falls even shorter. The mere making of a threat does not prove consummation of the threatened act.

The Commonwealth argues that Porter's guilt may be inferred from the expression of guilty knowledge implied in his false account of how Jan suffered her injuries. Should we accept this argument, we would necessarily ask, "guilty knowledge of what?" Porter might well have sought to avoid implication in murder. He might as well have sought to avoid accusation of recklessness or negligence, or have

sought simply to avoid responsibility for serious injury to his girl-friend. Each hypothesis is sound and each flows as well as the others from the proven facts. Guilty knowledge is a circumstance to be considered, but general guilty knowledge cannot suffice to prove a specific crime. *See Bishop v. Commonwealth,* 227 Va. 164, 170, 313 S.E.2d 390, 393 (1984); *Nelson v. Commonwealth,* 12 Va. App. 268, 271, 403 S.E.2d 384, 386 (1991).

We cannot conclude from the record before us that Jan's fatal injuries derived from Porter's conduct that was malicious or, being likely to cause death or great bodily harm, was willfully or purposefully undertaken.

Porter next contends that the trial court erred in denying his motion for a mistrial. Porter did not testify. In summarizing the case and setting forth the reasons for his judgment, the trial judge said, in part:

> Only the victim and the defendant were present when she died. He was in a position to know how she died. He didn't claim that she died by natural cause or by suicide, only that she accidentally fell of (sic) a stationary vehicle and struck her head or her leg. . . . He knew how she died, yet he chose to fabricate conflicting stories that are inconsistent with the facts.

Porter argues that these statements reflect the trial judge's consideration of his election not to testify. Because we reverse Porter's murder conviction on its merits, and because this problem is not likely to occur in the event of retrial, we do not deem it necessary that we address this issue.

The judgment of the trial court is reversed and this case is remanded to the trial court for proceedings on lesser charges if the Commonwealth be so advised.

*Reversed and remanded.*

Baker, J., and Bray, J., concurred.