# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Reynaurd Orlando Lewis, Jr.

December 16, 1997

Case No. CR95001106-00

BY JUDGE LYDIA CALVERT TAYLOR

The defendant in this case was charged with conspiracy to commit robbery, first degree murder, two counts of use of a firearm while committing a felony (to wit, murder and attempted robbery), and attempted robbery. A bench trial before this court was held on August 20 and 21, 1997. This court did not issue a finding at that time, but took the matter under advisement. For the reasons stated in this letter opinion, this court finds the defendant guilty of second degree murder and one count of use of a firearm while committing a felony (to wit, murder).

This court found the Commonwealth's witness, Anthony Williams, to be less than completely reliable as a witness on the issue of the formation by the defendant of the intent to rob the victim prior to driving to the Fort Worth area, where the victim's apartment was located. Williams constituted almost the entire case for the Commonwealth on the issue of robbery. Therefore, this court, although suspicious, cannot be persuaded, beyond a reasonable doubt, that the defendant is guilty of the robbery-related charges: conspiracy to commit robbery, attempted robbery, and use of a firearm while committing the felony of attempted robbery. This court believes that the defendant likely went to the decedent's home to rob the decedent, but is bound, as the trier of fact, to judge the defendant applying the standard of guilt beyond a reasonable

doubt.[1] As to the charge of first degree murder, the Commonwealth has implicitly acknowledged that its theory of the charge was based on felony murder, that is, in the commission of the felony of attempted robbery. The Commonwealth neither argued nor briefed another theory for conviction of the charge of first-degree murder. Therefore, this court is left with the options of finding the defendant either not guilty or guilty of a lesser-included homicide offense.

The facts presented at trial show that the defendant went to the victim's apartment, if not to rob the victim immediately, at least with that as an option if the victim did not agree to purchase the gun at the price demanded. Thus he went for no lawful purpose, with two friends, to the victim's apartment, with a gun. Williams went in first because the decedent knew him and would open the door to him. "That's why he opened the door," Williams said. "And then they [defendant and Antonio Davis] shoved me back as I opened the door." That is, after the decedent opened his apartment door, defendant and/or Davis shoved Williams in his back, as they stood at the open door, and gunfire began. Williams said several times that he did not see any gun on the decedent when he opened the door and that he did not see who shot first.[2] On cross-examination, the defendant admitted he had his gun in his hand when he went into decedent's apartment. He later said he had the gun tucked into his pants, but he admitted he took it out of his pants when he got to the hallway, before he went through the front door, into decedent's apartment. The decedent and defendant then engaged in a lengthy gun battle in the decedent's own home.

Although defendant argues that it is clear both that the decedent tried to rob the defendant and that the decedent shot first, this court was not persuaded of either of those facts. Among other conflicts, the decedent was expecting his children for visitation at the time the defendant says the decedent tried to shoot the defendant. Defendant also argues that the only version of the facts this court may believe is that of the defendant, but this court may, and should, take the physical evidence of the crime scene into account in its deliberations. The physical evidence indicates that a large number of shots were fired. The decedent was shot four times in the back, at

---

[1]    The convictions of the co-defendant, Antonio Eugene Davis, for second degree murder, attempted robbery, and conspiracy to commit robbery have been upheld by the Court of Appeals of Virginia. Unpublished Memorandum Opinion by Judge Joseph E. Baker, September 30, 1997.

[2]    Williams on cross-examination finally was led into saying the decedent shot first, a contradiction to his earlier repeated denials, on direct and cross-examination, on that very point.

least once at close range. Based on the testimony as to who had which gun and the forensic evidence, the Commonwealth contends that the defendant shot five times as many rounds as the decedent, one of which was fired into the decedent at a distance of less than twenty-four inches, according to the ballistics expert who testified.

This court finds the physical evidence at the scene to be vastly more persuasive than the defendant's self-serving, illogical, and unreasonable justification of his actions. The defendant, a convicted felon, was completely lacking in any credibility as a witness, based on his demeanor, impeachment, the illogical nature of the account he gave the court, the fact that he fled the scene after decedent was shot, and the two admittedly false accounts he had earlier given to police. Williams testified he saw the decedent crawling on the floor toward his position as Williams ran out the door; the defendant himself admitted that he was behind a chair, saw the decedent crawling on the floor, away from where he was, and fired several rounds at the decedent as decedent crawled on the floor. He said he just started shooting some more and ran out the door.[3] Asked why he shot so many times, when decedent only fired three shots, defendant merely stated, "I just kept on shooting. I was just shooting." He admitted he may have shot everything in the large clip, which may have contained as many as thirty bullets.

"In Virginia, every unlawful homicide is presumed to be murder of the second degree. When the Commonwealth proves an unlawful homicide and establishes the accused as the criminal agent, the presumption, which is no more than an inference, arises, and the defendant has the burden of going forward with some evidence to show circumstances of 'justification, excuse, or alleviation'." *Pugh v. Commonwealth*, 223 Va. 663, 667 (1982) (*quoting Hodge v. Commonwealth*, 217 Va. 338, 341, 343 (1976)). The defendant took the stand and admitted that he was the gunman in this case, and the facts indicate that this case is not one of self-defense. Therefore, this court finds that the Commonwealth has proven that an unlawful homicide occurred. The burden shifts to the defense to prove that the homicide was less than second-degree murder.

"To reduce a homicide from murder to voluntary manslaughter, the killing must have been done in the heat of passion and upon reasonable provocation." *Barrett v. Commonwealth*, 231 Va. 102, 105-6 (1986) (*citing Martin v. Commonwealth*, 184 Va. 1009, 1016-17 (1946)). "Malice, either express or implied, is of the essence of murder. It is the element that distinguishes it from

---

[3] Williams, defendant testified, had already run out of the house and was forty feet from the door, beside their car, when defendant ran out of the apartment.

manslaughter ... . When a homicide is committed in the course of a sudden quarrel or broil, or mutual combat, or upon sudden provocation, and without any previous grudge, the offence [sic] may be murder or manslaughter, according to the circumstances of the case." *Moxley v. Commonwealth*, 195 Va. 151, 157 (1953) (citations omitted).

> If, upon being assaulted, the passion of the assaulted person become greatly excited, and under that impulse he kill his assailant, though it be with a deadly weapon, the offence [sic] is manslaughter only. Yet should his resistance with a deadly weapon be made in a very cruel manner, not at all justified by the nature of the assault, the inference would be that malice, not passion, impelled the blow making his crime murder.

*Id.* at 158 (*quoting Briggs v. Commonwealth*, 82 Va. 554, 565 (1886)). "The authorities are replete with definitions of malice, but a common theme running through them is a requirement that a wrongful act be done 'wilfully or purposefully'." *Essex v. Commonwealth*, 228 Va. 273, 280 (1984). "In the absence of express malice, [malice] may only be implied from conduct likely to cause death or great bodily harm, wilfully or purposefully undertaken." *Id.* at 281. "Implied malice exists where any purposeful, cruel act is committed by one individual against another without any, or without great, provocation." *Pugh*, 223 Va. at 668.

As explained above, this court is persuaded by the large number of bullets fired, the close range within which at least one bullet was fired, and the indiscriminate manner in which they were fired, as well as the descriptions of where and how the defendant shot at the decedent that the defendant acted maliciously in the gunplay between himself and the decedent. Defendant's actions were willfully or purposefully undertaken, and his conduct was likely to cause death or great bodily harm. Given all of the above, including the physical evidence, this court finds that the defendant acted with malice, and has therefore not met his burden of proving mitigation by a preponderance of the evidence, which would rebut the existence of malice, which inheres in the use of a deadly weapon, especially as used in this case by the defendant, so as to lower the unlawful killing to manslaughter. The Commonwealth proved an unlawful homicide, which is presumed to be second-degree murder; this court finds the defendant embarked willfully and purposefully on conduct that would cause death or great bodily harm. *See Porter v. Commonwealth*, 17 Va. App. 58 (1993). The defendant failed to carry his burden of going forward

with credible evidence that this court accepts to show circumstances of justification, excuse, or alleviation. *See Pugh.* This court finds no credible evidence of either reasonable provocation or heat of passion such as would serve to lower this homicide to manslaughter. *See Jenkins v. Commonwealth,* 244 Va. 445 (1992); *Barrett.*

This court hereby finds the defendant guilty of second degree murder and use of a firearm in a murder. Being unable to say, beyond a reasonable doubt, that the evidence offered at trial was persuasive beyond a reasonable doubt on the three charges involving robbery, which were almost totally dependant on the co-defendant, Williams', less-than-persuasive testimony as to the original purpose for which the defendant sought out the decedent at the latter's residence, this court finds the defendant not guilty on the charges of conspiracy, attempted robbery, and using a firearm in the commission of attempted robbery.

Defendant will be sentenced in accordance with this finding and opinion on December 17, 1997.