UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, O'Brien and Fulton

KIMBERLY ANN DRAGICH

v.      Record No. 2204-23-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
DECEMBER 10, 2024

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Stephen E. Sincavage, Judge

(Ghislaine M. Storr Burks; Gardner & Burks, P.C., on briefs), for
appellant.  Appellant submitting on briefs.

(Jason S. Miyares, Attorney General; Liam A. Curry, Assistant
Attorney General, on brief), for appellee.

A jury convicted Kimberly Ann Dragich (appellant) of second-degree murder.  On

appeal, she argues that the evidence was insufficient to prove that she acted with malice.  After

examining the briefs and record, the panel unanimously holds that oral argument is unnecessary

because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court."  *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."

*Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

Appellant and Brian Bowles had a sporadic relationship during the 1990s, before marrying in June 2021. The marriage was tumultuous; the couple often argued. At one point in July 2021, appellant texted her sister-in-law, Dedra, that Bowles's "life from this point forward is nothing but hell" and that she would "make sure he regrets every waking moment." Dedra interpreted appellant's texts as "venting."

Bowles and appellant were at home drinking alcohol on August 8, when they had another argument. Appellant demanded that Bowles leave, but he refused. Around 5:00 p.m., appellant texted Dedra a picture of Bowles asleep in his truck and wrote, "I think I'm going to kill him in his sleep. I hate him that much." Dedra also interpreted that text as mere venting.

Around 7:00 p.m., appellant called the sheriff's department and asked for a deputy to come to her house. She stated that she was "not very comfortable" with Bowles being in the home, and although he had not hurt her, she "wanted a presence" before he did so. Fauquier County Sheriff's Deputy Cole Masterson responded and saw Bowles in the bed of his truck in the driveway. Bowles was not acting disorderly. Deputy Masterson talked to Bowles and then spoke to appellant, who told the deputy that that she "just wanted somebody to come over here and let him know that his behavior is not appropriate." Deputy Masterson told appellant to call the sheriff's department if there were further issues.

Around 9:00 p.m., appellant got into her car to drive to a convenience store. She backed out of the driveway and put the car in drive as Bowles walked into the street in front of the car, where he took pictures of her license plate. A neighbor, Luis Sierra, who was outside, estimated that Bowles was about three to five feet in front of appellant's bumper, roughly in the center of the vehicle. Streetlights and neighborhood porch lights illuminated the street, and it was "not too dark." Appellant stepped on the accelerator while Bowles was standing in front of her. Bowles tried to evade the car, but appellant struck him and knocked him to the ground, where he hit his

head. Sierra ran toward appellant and yelled, "What the hell did you do?" Appellant then looked toward where Bowles lay on the ground before driving forward and running over Bowles's legs. Bowles screamed, but appellant did not stop.

Another neighbor, Matthew Zurlo, heard the accident from his garage and saw appellant drive away. He chased her, not yet knowing whom she had hit. When he ultimately caught up to her at a stop sign and told her that she had hit a child, she responded, "I didn't hit a kid." Zurlo convinced appellant to return to the scene.

Zurlo's wife, Erica, called 911, and told the operator that her neighbor "ran over her husband" and "just drove off." Zurlo also called 911 and reported that his neighbor "just ran over a child."

Zurlo and Sierra testified that appellant showed no emotion when she returned to the scene and saw Bowles "[u]nconscious, writhing, and clearly in pain." Appellant was a registered nurse, and people standing nearby called out for her to help Bowles. According to Sierra, appellant checked Bowles's pulse and remarked, "Oh, he's fine." Bowles was lying on his back, "in the middle of the road" when medical personnel and Sheriff's Deputy Kelsey Omohundro arrived. Appellant told Deputy Omohundro that she and Bowles had been arguing all weekend and that she told him to leave the house. When she tried to drive to a convenience store, Bowles stood near her car to take pictures of her license plate so he could report that she was driving under the influence. She admitted that "she hit the gas pedal and hit him, but she didn't mean to hit him that hard." Appellant claimed that she was only trying to scare him away from the vehicle. She also acknowledged that she knew she had hit him before she left the scene.

Detective Kurt Schlichting interviewed appellant at the sheriff's department several hours later. Appellant told Schlichting that Bowles often insulted her and her life with him was "unbearable." On August 8, she had asked Bowles to leave and threw some of his clothes out of

- 3 -

the house. Appellant admitted that during the incident, she "stepped on the gas," but claimed that she "wasn't stepping on the gas to hurt [Bowles]" and "was just trying to jump" him. She denied knowing that she had hit him but acknowledged that she had "heard something" and "didn't know what it was." When Schlichting asked her if she meant to kill Bowles, she answered, "Sometimes I want to kill him. Sometimes I just want to [w]ring his neck, but I don't want to kill him. No, I don't want to kill him. I couldn't kill him. I couldn't even kill a fly. But, God, yes, he makes me so mad."

Bowles died of blunt force trauma injuries to the head and legs. He had a head laceration, a skull fracture, a subdural hemorrhage, a brain contusion, and a fractured left femur.

Appellant's BAC was 0.10% according to a preliminary breath test taken at the scene, and 0.08% based on a breath test administered about two hours after the incident. An expert in forensic toxicology opined that her BAC would have been between 0.09 and 0.15% at the time of the incident.

Appellant testified on her own behalf and denied that she intentionally hit Bowles or that she meant to harm him. The court instructed the jury on the elements of second-degree murder, voluntary manslaughter, and involuntary manslaughter, and the jury convicted appellant of second-degree murder.

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). The only relevant question for this Court on appeal "is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (alteration in original) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

"[T]he factfinder ultimately remains responsible for weighing the evidence" and "determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017). "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." *Fary v. Commonwealth*, 77 Va. App. 331, 344 (2023) (en banc) (quoting *Lucas v. Commonwealth*, 75 Va. App. 334, 348 (2022)).

"If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680).

"In Virginia, every unlawful homicide is presumed to be murder of the second degree." *Tizon v. Commonwealth*, 60 Va. App. 1, 10-11 (2012) (quoting *Pugh v. Commonwealth*, 223 Va. 663, 667 (1982)). "Murder at common law is a homicide committed with malice, either express or implied." *Id.* at 11 (quoting *Pugh*, 223 Va. at 667). "Second-degree murder does not require a specific intent to kill." *Id.*

Appellant does not dispute that she killed Bowles but argues that the Commonwealth failed to prove that she acted with malice. Malice is "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Meade v. Commonwealth*, 74 Va. App. 796, 813 (2022) (quoting *Watson-Scott v. Commonwealth*, 298 Va. 251, 255-56 (2019)). "Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (quoting *Canipe v.*

*Commonwealth*, 25 Va. App. 629, 642 (1997)). "[M]alice may be either express or implied by conduct." *Watson-Scott*, 298 Va. at 256 (quoting *Essex v. Commonwealth*, 228 Va. 273, 280 (1984)).

"Malice may also 'be inferred "from the deliberate use of a deadly weapon.""" *Palmer*, 71 Va. App. at 237 (quoting *Doss v. Commonwealth*, 23 Va. App. 679, 686 (1996)). "A deadly weapon is one which is likely to produce death or great bodily injury from the manner in which it is used, and whether a weapon is to be regarded as deadly often depends more on the manner in which it has been used than on its intrinsic character." *Pannill v. Commonwealth*, 185 Va. 244, 254 (1946) (quoting 40 C.J.S. *Homicide* § 25). "A motor vehicle, wrongfully used, can be a weapon as deadly as a gun or a knife." *Essex*, 228 Va. at 281.

This Court's opinion in *Canipe* is particularly instructive. In that case, the defendant and the victim both stopped in a parking lot after a traffic altercation. *Canipe*, 25 Va. App. at 636. The victim exited his vehicle and approached the front of the defendant's vehicle. *Id.* at 635. The defendant accelerated at 15 miles per hour and struck the victim, killing him. *Id.* at 635-36. We held that the evidence supported the jury's finding that the defendant acted maliciously because he "willfully and deliberately" took an action that was "likely to cause great bodily harm to the victim." *Id.* at 644.

Here, as in *Canipe*, there was sufficient evidence for the jury to conclude that appellant acted maliciously. The evidence, in the light most favorable to the Commonwealth, showed that appellant intentionally applied the accelerator knowing that Bowles was standing three to five feet in front of her vehicle. "[I]t is permissible for the fact finder to infer that every person intends the natural, probable consequences of his or her actions." *Commonwealth v. Perkins*, 295 Va. 323, 330 (2018) (quoting *Ellis v. Commonwealth*, 281 Va. 499, 507 (2011)). The natural and probable consequences of appellant's act is that she would hit Bowles with a deadly weapon. *See Essex*, 228

Va. at 281.  And although appellant claimed that she did not intend to hit Bowles, the jury "was at liberty to discount [appellant's] self-serving statements as little more than lying to conceal [her] guilt." *Poole v. Commonwealth*, 73 Va. App. 357, 369 (2021) (first alteration in original) (quoting *Becker v. Commonwealth*, 64 Va. App. 481, 495 (2015)).

By appellant's own admission, she knew that she had hit something but continued driving. The jury could conclude that her claim that she did not know she had hit Bowles was incredible, especially considering Sierra's testimony that appellant looked at Bowles on the ground before running over his legs and that Bowles screamed while she did so.  Moreover, appellant's text messages to Dedra and her statements to the police demonstrated a motive to kill Bowles.  *See Archie v. Commonwealth*, 14 Va. App. 684, 690 (1992) ("[A]lthough motive is not a necessary element . . . , 'it is relevant and often most persuasive upon the question of the actor's intent.'" (quoting *Epperly v. Commonwealth*, 224 Va. 214, 232 (1982))).  Finally, the jury could consider Zurlo and Sierra's testimony about Bowles's apparent lack of remorse or emotion at the scene.

*Essex*, on which appellant relies, does not compel a different result.[1]  There, the Supreme Court held that driving while under the influence of alcohol does not by itself establish malice to support a second-degree murder conviction.  *See Essex*, 228 Va. at 282.  But the Court emphasized that, when "review[ing] a second-degree murder conviction based upon the use of an automobile, . . . the governing principles are the same as those which apply to any other kind of second-degree murder."  *Id.* at 281.  And a defendant's "state of intoxication, however great, will not repel an inference of malice, implied by the circumstances surrounding [her] conduct."  *Id.* at 282.  Here, the jury could infer malice from the surrounding circumstances *other than* appellant's

---

[1] Appellant also relies on *Porter v. Commonwealth*, 17 Va. App. 58 (1993), in which we reversed a conviction for second-degree murder committed using an automobile because the Commonwealth failed to prove malice.  But in *Porter*, "[n]o evidence established who or what set the car in motion."  *Id.* at 62.  Here, it is undisputed that appellant was driving the car that killed Bowles.

possible intoxication. Ultimately, it was the province of the jury to assess whether appellant's alternate hypothesis of innocence was reasonable. *Fary*, 77 Va. App. at 344.

Appellant's remaining arguments also fail to consider the evidence in the light most favorable to the Commonwealth and are unavailing. Appellant asserts that she "was steadfast . . . that her actions were not intentional." But again, the jury was not required to credit her self-serving statements. She also cites her "volitional and immediate return to the scene." But that claim ignores the fact that she first drove away from the scene despite realizing that she had hit something and did not return until Zurlo caught and confronted her. *See Canipe*, 25 Va. App. at 645 (holding that the defendant's decision to keep driving after hitting the victim supported the conclusion that he had hit the victim deliberately).[2] And although appellant did not ask Bowles to stand in front of her car, that fact has little relevance to whether appellant acted maliciously in choosing to run him over once he was there. *See id.* at 644 (finding malice even though the victim approached the front of the defendant's vehicle on his own accord).

Finally, appellant asserts that "a killing committed in the heat of passion and with reasonable provocation" is voluntary manslaughter, but she provides no argument or legal authority establishing "reasonable provocation" beyond her bare assertion that Bowles's decision to take "pictures of her vehicle as evidence of her driving while under the influence" was "a clear act of provocation." Reasonable provocation is that which "renders a [person] deaf to the voice of reason." *Dandridge v. Commonwealth*, 72 Va. App. 669, 681 (2021) (quoting *Woods v. Commonwealth*, 66 Va. App. 123, 131 (2016)). "'As a general rule, whether provocation, shown by credible evidence, is sufficient . . . to rebut the presumption of malice arising from a homicide is a

---

[2] Appellant attempts to distinguish *Canipe* on the ground that Canipe also took other steps to hide his crime, such as replacing his damaged windshield. But we cited that as only "*further* support" of malice. *Canipe*, 25 Va. App. at 645 (emphasis added). Appellant had no similar opportunity to conceal her involvement because she was promptly confronted by eyewitnesses. That fact alone does not render *Canipe* inapposite.

question of fact' to be decided by the jury." *Id.* at 682 (quoting *Woods*, 66 Va. App. at 131-32).

Further, "[w]ords alone, however insulting or contemptuous, are never a sufficient provocation" to

negate malice. *Canipe*, 25 Va. App. at 643 (quoting *Read v. Commonwealth*, 63 Va. (22 Gratt.)

924, 938 (1872)). Although the jury was instructed on voluntary manslaughter, it convicted

appellant of second-degree murder. Sufficient evidence supports the jury's conclusion.

CONCLUSION

For these reasons, we affirm the circuit court's judgment.

*Affirmed.*